UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY THOMAS LOPEZ,<br><br>  Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>  Defendant. | Case No. 1:13-cv-02068-BAM<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

**<u>INTRODUCTION</u>**

Plaintiff Rodney Lopez ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits under Title II of the Social Security Act, respectively.[1]  The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe.  The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to deny benefits.

///

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to conduct all further proceedings in this case before the Honorable Barbara A. McAuliffe, United States Magistrate Judge. (Docs. 6, 9).

# FACTS AND PRIOR PROCEEDINGS[2]

In 2010, Plaintiff filed an application for disability insurance benefits, alleging disability beginning September 1, 2009. AR 133-134. Plaintiff's application was denied initially and on reconsideration AR 76, 81. Subsequently, Plaintiff requested a hearing before an ALJ. AR 86-88. ALJ Danny Pittman held a hearing on May 14, 2012, and issued an order denying benefits on May 25, 2012. AR 12-19. The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request for review on October 25, 2013. AR 1-6. This appeal followed.

**Plaintiff's Testimony**

ALJ Pittman held a hearing on May 14, 2012 in Fresno, California. Plaintiff appeared and testified and was represented by attorney Robert Ishikawa.

Plaintiff was born on June 20, 1966 and was forty-five years old at the time of the hearing. AR 26. He has five daughters ranging in age from fourteen to twenty-five and one stepson. AR 27. He lives with his fiancé, youngest daughter, stepson, and mother-in-law. AR 28. Plaintiff completed the eleventh grade. AR 29. He has not worked since September 2009 due his diagnosis of Parkinson's disease. AR 31. Plaintiff sees his primary care physician on the weekends at Madera Community Hospital. AR 31. He is currently taking Lexapro, Tramadol, and Motrin to cope with his illness. AR 32, 34. These medications do not have any adverse side effects and they help reduce his pain. AR 33, 35.

As a result of his condition, Plaintiff contends that his doctors told him not to lift anything over five to ten pounds and not to do any extended walking or standing. AR 32. He stated that he cannot sit for long periods of time because it hurts his lower back, and he experiences numbness on the right side of his leg left leg when getting up from the seated position. AR 34. He also has burning pain in his neck and shoulders,. AR 34. He reported that any kind of over exertion

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

exacerbates his pain. AR 35.  He has trouble carrying anything in his right hand, and can only carry as much as a twelve pack of soda in his left. AR 38. He can still button his pants, but he cannot put on his shoes or tie them. AR 38. Plaintiff claims that he has fallen over a dozen times because of his Parkinson's. AR 39. As a result, he uses a cane three to four days a week, however it is not prescribed by a doctor. AR 37, 50. He also has a hard time bending over because of weakness in his legs and because it causes nausea. AR 39.

When asked about his daily activities, Plaintiff stated that he gets up early every day to try and help get his daughter off to school. AR 40. She is an insulin dependent diabetic and requires on-going care. AR 28. His fiancé quit her job to stay home and care for their daughter so they are currently relying on public assistance to meet their family's needs. AR 28-29.  Plaintiff has a driver's license and drives often.  AR 29.  Sometimes he goes with his father to visit with his grandfather.  AR 40.  He stated that he usually only gets two to four hours of sleep a night because his racing thoughts keep him awake. AR 41. He sometimes takes two to three naps throughout the day to make up for his lack of sleep. AR 42.

His ability to care for himself has deteriorated.  His fiancé helps him get dressed. AR 42. He has not cooked, done dishes, or laundry in about two months. AR 43. It has been five or six months since the last time he vacuumed or helped with yard work. AR 43-44. When grocery shopping he cannot carry anything, but sometimes transfers the groceries from the cart to the car. AR 44-45. He goes to church every week and will alternate between sitting and standing. AR 45. His mother-in-law takes care of his two dogs. AR 45.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 178-247.  Plaintiff has been evaluated by several doctors.  He began treatment with his primary care physician Dr. Mohammad Arain, M.D., since 1996 and is currently a patient.  AR 227-247.  Treating

3

neurologist, Madhav Suri, M.D., saw Plaintiff from January 9, 2007 to March 18, 2010. AR 178-207.  On October 4, 2010, Dr. Robert Wagner, M.D., a state agency consultative physician, completed a comprehensive internal medicine evaluation. AR 208-212.  State agency consultative physician Dr. Abbas Mehdi, M.D., performed a neurological consultative exam on May 9, 2011. AR 216-218.  Finally, state agency physicians Drs. Richard Betcher, M.D. and L. Bobba, M.D., reviewed Plaintiff's medical records in November 2010 and May 2011 respectively. AR 213-214, 219-223. The relevant sections of the reports are outlined below.

   **(a)**   *Dr. Mohammad Arain, Treating Physician*

Plaintiff started seeing Dr. Arain on November 7, 1996 for his work physical exam, however, the record only contains medical records starting in 2006. AR 244.  Plaintiff has had several appointments and no shows throughout the recent years. AR 229, 232, 233, 235, 236. In January 2007, Dr. Arain referred him to neurologist Madhav Suri, M.D. for Parkinson's symptoms.  In mid-2010 Plaintiff was involved in two different car accidents which exacerbated his neck and shoulder pain. AR 232, 237. Dr. Arain prescribed Vicodin and physical therapy. AR 231-232. In September 2010, Plaintiff completed his physical therapy goals and reported a 95% reduction of symptoms since his first accident.  AR 237.  He was also able to complete all of his activities of daily living. AR 237. In December 2010, Dr. Arain released Plaintiff back to work. AR 229.

On March 22, 2011, Dr. Arain completed a hand written note stating that Plaintiff had increased symptoms of Parkinson's disease including: progressive tremors, progressive short term amnesia, unstable gait with repeated falls, and bilateral leg weakness. AR 227. He also reported that Plaintiff was incapable of any gainful work because his condition was deteriorating.  He noted that Plaintiff lost his job, lost his insurance, and was having trouble getting medical care. AR 227.  Treatment notes from February 25, 2012 indicate that Plaintiff had progressive

Parkinsons with frequent falls, progressive involuntary tremors, stiffness, and weakness of legs. AR 239, 244. In the comments section of that note, Dr. Arain stated that Plaintiff's understanding of his progressive condition was causing him to become more depressed and helplessness. Dr. Arain opined that Plaintiff should "be given full retirement benefits and Social Security benefits" so he could concentrate on his health care. AR 245.  Lastly, on April 23, 2013, almost one year after the hearing, Dr. Arain wrote another letter opining that Plaintiff's "condition has deteriorated and he is unable to engage in any gainful employment." AR 247. He reported that Plaintiff's Parkinson's had progressed to the extent that he could no longer hold onto anything and he had suffered repeated falls. AR 247. Dr. Arain's letter opined that Plaintiff is totally and permanently disabled for any kind of job. AR 247. No medical evidence was provided with the letter.

### (b)   *Dr. Madhav Suri, Treating Neurologist*

Dr. Suri evaluated Plaintiff on January 9, 2007 for intermittent shaking of his right arm. AR 205. He also noted that Plaintiff was having mood changes, difficulty focusing, and throbbing headaches. AR 205. Despite his complaints, Plaintiff's MRI was normal. EMG nerve conduction studies from May 2006 revealed bilateral median nerve entrapment of the wrists, mild on the left side and normal on the right lower extremity. AR 205. Dr. Suri reported that the possibility of Parkinson's disease could not be ruled out and he recommended continued observation. AR 206. Plaintiff was also advised to rest from work for the next few weeks. AR 206. At his May 14th appointment several months later, Dr. Suri noted that the tremor was more prominent and most suggestive of early Parkinson's disease. AR 203.

The next year on June 13, 2008, Dr. Suri noted that it was likely that Plaintiff had idiopathic Parkinson's disease. The doctor noted that Plaintiff had bilateral hand pain and recommended conservative treatment including using wrist splints.  AR 191. One year later in

July 2009, Dr. Suri's notes indicate that in addition to the right hand tremor, Plaintiff was also experiencing stiffness in the right leg and mild cogwheeling rigidity in the right hand. AR 187. At this point Dr. Suri prescribed an antiparkinsonian medication because Plaintiff stated that he wanted to return to work. AR 187. In October 2009, Plaintiff reported numbness in his right leg and pain in his right ankle. AR 184. On March 18, 2010, Plaintiff was having trouble getting his current medications at his pharmacy and was going to try somewhere else. AR 180. At this point, Plaintiff continued to have the tremor in his right hand and the cogwheeling rigidity but he reported no tripping or falling.  AR 180.

### (c) *Dr. Roger Wagner, State Agency Consultative Examiner*

On October 4, 2010, Plaintiff saw Dr. Wagner for a comprehensive internal medicine evaluation. AR 208-212. It was noted that Plaintiff had been diagnosed with Parkinson's disease and he had a noticeable pill-rolling tremor in his right hand with no other significant symptoms. AR 211.  A slight tremor was noted in the left hand when Plaintiff held his hands out from his body. AR 208. Dr. Wagner observed that Plaintiff sat comfortably, he got on and off the exam table without difficulty, and he could bend over completely to put his socks and shoes back on. AR 209. In terms of his daily activities, Plaintiff told Dr. Wagner that he does some of the cooking, cleaning, and light yard work. He also drives, shops, and enjoys working on classic cars. AR 209. Although Dr. Wagner found that Plaintiff has slight limitations with fine fingering, particularly in the right hand, he asserted no limitations in sitting, standing, lifting, or carrying. AR 211.

### (d) *Dr. Abbas Mehdi, State Agency Consultative Examiner*

On May 9, 2011, Plaintiff saw Dr. Mehdi for a neurological consultation. Dr. Mehdi found full range of motion of the joints of the right side including upper and lower extremities, and Plaintiff's neck and back were also normal. AR 217.  He noted persistent shaking of Plaintiff's

right hand that was both resting and intentional. AR 217. Dr. Mehdi was not sure if the tremors were related to the Parkinson's disease or were caused by stress/anxiety or secondary gain. AR 217. No tremors were noted in the right leg or left extremities. AR 217. Plaintiff walked with normal gait and had good postural tone. AR 217. Dr. Mehdi also stated that, "The tremors are mild in nature and if this is Parkinson's disease then it is a mild condition." AR 217. Ultimately, he opined that Plaintiff could lift up to twenty pounds frequently and fifty pounds occasionally, there was no limitation in sitting or standing, and some limitation in exertion on the right side in pushing, pulling, and fine or gross manipulation. AR 218.

    **(e)**  ***Dr. Richard Betcher and Dr. L. Bobba, Non-Examining Physicians***

Dr. Betcher reviewed Plaintiff's records on November 1, 2010. AR 213. He agreed with the Parkinson's diagnosis and the right hand tremor. He found Plaintiff to have no limitations aside from fine fingering. AR 214.

Dr. Bobba reviewed the records on May 23, 2011. AR 223. He opined that Plaintiff could occasionally lift fifty pounds and frequently lift twenty-five pounds, he had no limitation in standing, sitting or walking, he was limited in his upper extremities for pushing and pulling, he could never climb ramps, stairs, ladders, ropes, or scaffolds, and could frequently handle and finger with the right extremity. AR 221.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 12-19. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since September 1, 2009. AR 14. Further, the ALJ identified Parkinson's disease as a severe impairment. AR 14. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 25.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry fifty pounds occasionally and twenty-five pounds frequently; frequently handle and finger with the right upper extremity; but he is precluded from climbing ladders, ropes, and scaffolds. AR 14. Given the above, the ALJ also found Plaintiff could perform his past relevant work as a machine operator as it is performed in the national economy. AR 18. He also found that Plaintiff could perform a significant number of other jobs that exist in the national economy, including patient transport, a retail meat clerk, and a machine packager. AR 19. As a result, the ALJ found that Plaintiff was not disabled under the Social Security Act. AR 19

**The Appeals Council's Decision**

After the ALJ issued a decision denying benefits, Plaintiff submitted an additional medical record to the Appeals Council from Dr. Arain dated April 23, 2013. AR 5. The written letter indicated that Plaintiff's condition had deteriorated over time and he was permanently disabled. AR 247. However, no additional information or medical evidence supporting that letter was submitted.[3] On October 25, 2013, the Appeals Council denied Plaintiff's request for review. AR 1. The Appeals Council stated that it had considered Plaintiff's arguments with respect to the ALJ's decision, as well as the new evidence. AR 1, 5. The Appeals Council "found that this information [did] not provide a basis for changing the Administrative Law Judge's decision." AR 2.

///

---

[3] In *Brewes v. Commissioner*, 682 F.3d 1157 (9th Cir. 2012), the Ninth Circuit considered the question of whether evidence submitted for the first time to the Appeals Council must be considered by the district court on appeal. The Court concluded, "[w]e hold that when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Id*. at 1163. Here, all documents listed above were made a part of the administrative record. AR 12, 18. Accordingly, this Court will consider this evidence when reviewing the administrative record. *Brewes v. Commissioner*, 682 F.3d at 1163.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987); *see also Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 2002).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882

F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  Here, Plaintiff argues that the ALJ improperly evaluated the medical evidence and that the ALJ did not give clear and convincing reasons to reject his testimony.

## **DISCUSSION**

### **1.     The ALJ Properly Discounted the Opinion of Dr. Mohammad Arain**

Plaintiff contends the ALJ erred in failing to adopt the opinions of his treating physician Dr. Mohammad Arain.  (Doc. 15 at 6-9.)  In opposition, the Commissioner argues that the ALJ considered all of the medical evidence and properly rejected Dr. Arain's opinion.  (Doc. 19 at 7-13.)

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians), (2) those who examine but do not treat the claimant (examining physicians), and (3) those who neither examine nor treat the claimant (non-examining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  When the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of a non-examining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d

1456 (9th Cir. 1984).  In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a non-examining medical advisor.  *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).  For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the non-examining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . . ."  *Magallanes*, 881 F.2d at 752.  Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, contrary reports from examining physicians, and testimony from the claimant that conflicted with her treating physician's opinion.  *Id.* at 751-52.

If a treating physician's opinion is not given controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician.  C.F.R. § 404.1527(d)(2).  Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician and the "nature and extent of the treatment relationship" between the patient and the treating physician.  20 C.F.R. § 404.1527(d)(2)(i)-(ii).  Other factors include the supportability of the opinion, consistency with the record as a whole, specialization of the physician, and extent to which the physician is familiar with disability programs and evidentiary requirements.  20 C.F.R. § 404.1527(d)(3)-(6).

In reviewing the medical evidence and rejecting Dr. Arain's opinion, the ALJ stated the following:

> Because this opinion about the claimant's ability to perform past work or any work concerns an issue reserved to the Commissioner and is not an opinion as to the nature and severity of the claimant's impairment, it cannot be accorded special weight (20 CFR

11

> §404.1527(e) and Social Security Ruling 96-5p). Dr. Arain's belief that the claimant is unemployable is a conclusory statement and does not include specific work-related limitations or the medical evidence to support the cause for the limitations. I give very little weight to Dr. Arain's opinion as it appears that he was relying more on the claimant's subjective symptom complaints than with any clinical findings.
> AR17.

Plaintiff argues that ALJ did not provide specific and legitimate reasons for rejecting Dr. Arain's opinion. The Court disagrees. As part the evaluation of the medical evidence, the ALJ gave a detailed summary of the medical records and outlined the bases for his conclusions. These findings are supported by substantial evidence for the following reasons.

First, it would not have been proper for the ALJ to give special weight to Dr. Arain's opinion about Plaintiff's ability to engage in gainful employment because this decision is reserved for the Commissioner. AR 17, 227, 244, 247. *See* 20 C.F.R. § 404. 1527(e); Social Security Ruling (SSR) 96-5p (noting that "treating source opinions on issues that are reserved to the Commissioner," such as whether an individual is disabled or is prevented from doing past work, "are never entitled to controlling weight or special significance"). Specifically, the ALJ noted that Dr. Arain did not provide any medical evidence or work related limitations to support his statement that Plaintiff was unemployable. AR 17, 227. Medical opinions should include functional limitations and information regarding physical activities. Here, none were provided which serves as a basis to reject the opinion. *See 20* C.F.R. § 416.913(c)(1)(provides that a medical source's statement about what a claimant can still do should include functional information regarding physical activities such as sitting, standing, walking, etc.).

Second, the ALJ properly noted that Dr. Arain's conclusory opinions were based more on Plaintiff's subjective complaints rather than on any clinical findings. For example, the report Dr. Arain issued on February 25, 2012, does not reference any testing or examination that he performed himself, but instead recites Plaintiff's reports of pain, stiffness and increased falls. AR

244.  The same is true for the second letter Dr. Arain issued on April 23, 2013.  AR 247.  A review of the medical record reveals that while there are references to Plaintiff falling, it appears these are all based on Plaintiff's self-reports as there is no doctor visits to treat injuries from falling.  AR 239, 227.  Additionally, Dr. Arain references the evaluations performed by Dr. Suri, Plaintiff's neurologist.  However, as discussed in more detail below, none of Dr. Suri's evaluations indicated that Plaintiff was experiencing the severity of symptoms outlined in Dr. Arain's letter.  AR 180, 187, 191.  Given these facts, it was proper for the ALJ to discount Dr. Arain's conclusory opinions as they were based on Plaintiff's subjective complaints.  *See See Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole.); *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 602 (9th Cir. 1999) (a physician's opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations" may be disregarded where those complaints have been "properly discounted."); *Young v. Heckler,* 803 F.2d 963, 967-68 (9th Cir. 1986) (if an opinion is brief and conclusory and lacking in clinical detail, an ALJ may afford it little weight.).

Third, there is also substantial evidence supporting the ALJ's finding that Dr. Arain's opinions were not supported by the objective medical evidence.  AR 17. For example, in the visits following the alleged onset of disability, Dr. Suri, who was treating Plaintiff at the same time as Dr. Arain, found all objective tests to be essentially negative, including EEG and MRI tests and labs.  AR 187.  Even in the later stages of treatment, Dr. Suri found that Plaintiff's right hand tremor and mild cogswheel rigidity were the only significant signs of Parkinson's disease and Plaintiff had not reported tripping or falling. AR 180, 184, 187, 191, 194, 197.  In October 2010, consultative examiner, Dr. Roger Wagner, reported that Plaintiff had right hemiparkinsonism

with a pill-rolling tremor, but no other significant symptoms of Parkinson's disease.[4] Similarly, on May 9, 2011, Plaintiff saw Dr. Mehdi for a neurological consultation. Dr. Mehdi found full range of motion of the joints of the right side including upper and lower extremities, and Plaintiff's neck and back assessments were also normal. AR 217. He noted persistent shaking of Plaintiff's right hand that was both resting and intentional, but Dr. Mehdi was not sure if the tremors were related to the Parkinson's disease or caused by stress/anxiety or secondary gain. AR 217. No tremors were noted in Plaintiff's right leg or left extremities, and Plaintiff walked with normal gait and had good postural tone. AR 217. Dr. Mehdi also stated that Plaintiff's tremors were mild in nature and if he had Parkinson's disease, then it is a mild condition. AR 217. Contrary to these all of these doctors' evaluations, in March 2011, just two months prior to Dr. Mehdi's assessment, Dr. Arain stated that Plaintiff was incapable of any kind of work. AR 227. The Court notes that because Parkinson's is a progressive disease, the most recent medical report would be most probative. *Stone v. Heckler*, 761 F. 2d 530, 532 (9th Cir. 1985). However, given the disparity between Dr. Arain's conclusions and the other doctors' examinations, the ALJ and the Appeals Council properly found that Dr. Arain's opinions were not supported by the medical record. Incongruity between a treating physician's opinion and other evidence in the record is a proper basis for discounting a treating physician's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Finally, the ALJ gave weight to the state agency non-examining physicians who found that Plaintiff could occasionally lift and carry fifty pounds and frequently carry twenty-five pounds, with a limitation in pushing and pulling in the upper extremities, and limited handling and fingering in the right extremity due to mild hand tremors. AR 214, 219-223. The ALJ's reliance the non-examining physicians' opinions, as well as the consultative physicians' opinions

---

[4] The ALJ ultimately gave Dr. Wagner's opinion limited weight. AR 17.

constitutes substantial evidence supporting the ALJ's RFC determination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion alone constitutes substantial evidence because it rests on independent examination); *see Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."). Thus, the Appeals Council and ALJ Pittman's assessments of the medical evidence is supported by substantial evidence.

### 2. The ALJ Did Not Err in Discrediting Plaintiff's Subjective Symptom Complaints

Plaintiff argues that the ALJ failed to provide clear and convincing evidence for finding Plaintiff's subjective testimony not credible. (Doc. 15 at 9-12). In reply, the Commissioner contends that the ALJ properly discredited Plaintiff's testimony. (Doc. 19 at 13-16). A review of the record reveals the ALJ properly assessed Plaintiff's credibility.

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Treichler v. Comm. of Soc. Sec.*, 775 F. 3d 1090 (9th Cir. 2014). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings and provides clear and convincing reasons for doing so. *Id.* The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence."); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to

the individual's statements and reasons for that weight."). Other factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

In this case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" AR 16. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-82.

Because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Smolen*, 80 F.3d at 1283-84; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, it is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 345-46.

Here, the ALJ gave the following reasons for discounting Plaintiff's credibility:

> The claimant has not received treatment consistent with a chronic pain syndrome such as biofeedback, acupuncture, use of a TENS unit, or attendance at a pain management clinic. The claimant cancelled or failed to show up for doctor appointments on a number of occasions. AR 16.
>
> ……………………………………………………………………………...
>
> The medical evidence does not substantiate any other limitation other than right hand tremor. AR 16.
>
> ……………………………………………………………………………...
>
> In sum, the above residual functional capacity assessment is supported by the evidence as a whole. The claimant's subjective symptom complaints are less than fully credible, and the objective medical evidence does not support the alleged severity of symptoms. I find that the claimant can do work subject to the residual functional capacity assessment. AR 18.

Thus, the ALJ provided three clear and convincing reasons for rejecting Plaintiff's testimony including: 1) Plaintiff's conservative treatment; 2) missed appointments; and 3) inconsistencies between the Plaintiff's reported symptoms and the medical evidence. These findings are supported by the record.

With regard to Plaintiff's treatment, the ALJ noted that Plaintiff did not receive treatment that was consistent with chronic pain such as biofeedback, acupuncture, use of a TENS unit, or attendance at a pain management clinic. AR 16. Indeed, Plaintiff testified at the hearing that his current medications reduce his pain, were largely effective, and have no adverse side effects. AR 33-35. He also testified that the cane he sometimes uses is not prescribed by a doctor. AR 50. It is proper for the ALJ to rely on Plaintiff's conservative treatment when evaluating his credibility. *See, Warre v. Comm'r Soc. Sec.* 439 F. 3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for disability); *Osenbrock v. Apfel,* 240 F.3d 1157, 1166 (9th Cir. 2001) (claimant not credible where he "has not participated in any significant pain regimen or therapy program"); *Matthews v.*

*Shalala,* 10 F. 3d 678, 680 (9th Cir. 1993) (claimant's allegations of disabling symptoms not credible where claimant use of medications controls symptoms).

Additionally, the ALJ properly noted that Plaintiff cancelled or failed to show up for doctor's appointments on a number of occasions. This finding is supported by the record because Plaintiff either cancelled, or did not show up for at least eight different appointments with his treating physician. AR 228-241. Failure to follow prescribed treatment is a proper basis to reject a claimant's testimony. *See, Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989).

Although Plaintiff has argued that his lack of pursuing other treatment modalities and missed appointments is due to his lack of insurance, the Court is not persuaded by this argument. As a preliminary matter, this issue was raised for the first time in this appeal despite the fact that Plaintiff was represented by counsel at the hearing. In fact, at the hearing, Plaintiff testified that he had MediCal, and although some of his medications were changed due to affordability, he felt their effectiveness was the same. AR 32. He testified that he was prescribed Vicodin, but that he stopped taking it because he was taking other medications. AR 34.

With regard to Plaintiff's missed appointments, Dr. Arain continued to see Plaintiff periodically, so his failure to attend appointments because of a lack of insurance is also not compelling. AR 227- 241. Similarly, he also received physical therapy in 2010 with apparently no insurance, but no financial issues were reported. AR 237. Moreover, although he now argues (and previously testified) that the physical therapy did not help him, the medical record indicates that he was discharged from physical therapy with all of his goals met and went back to work shortly thereafter. AR 33, 229, 237.

Finally, the objective medical evidence supports the ALJ's conclusion that Plaintiff's subjective symptom complaints were not entirely credible. As explained previously in this order, the ALJ recognized that the medical evidence did not substantiate any limitations other than the

right hand tremor. AR 16, 214, 219-223. Despite Plaintiff's complaints about his constant stabbing back pain and burning neck pain, Dr. Suri, Dr. Medhi, and Dr. Wagner all performed physical examinations and none of them noted any neck or back limitations, or any sitting, standing, or walking restrictions. AR 178-212, 215-218.  This lack of objective medical evidence is one factor that the ALJ may rely on when evaluating Plaintiff's credibility. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects"); *See also Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility).

Given all of the above, the ALJ provided clear and convincing reasons that are supported by substantial evidence when concluding Plaintiff's subjective symptom testimony was not credible. Here, the ALJ clearly identified what testimony he found not credible and what evidence undermined Plaintiff's complaints. *Lester v. Chater,* 81 F.3d at 834.  Although there may be more than one rational interpretation of the evidence, if the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  Accordingly, the ALJ's credibility findings are free of legal error.

///

///

///

///

///

///

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is directed to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Rodney Lopez.

IT IS SO ORDERED.

Dated:   **March 30, 2015**              /s/ Barbara A. McAuliffe
                                                                    UNITED STATES MAGISTRATE JUDGE